Good afternoon, Illinois Appellate Court, 1st District Court is now in session, the 1st Division, the Honorable Justice Michael B. Hyman presiding, case number 21-0441, Brighton Properties LLC v. Kids Work Chicago, Inc. Good afternoon. My name is Justice Michael Hyman. With me is Justice Aurelia Paczynski and Justice Mary Ellen Coghlan. We're going to conduct this as if we were in the courtroom. We'll probably interrupt you. Please finish what you're saying, if you can, and answer our questions, we'd appreciate it. The appellant, you have 20 minutes. So does the other side, you have 20 minutes, and you can reserve, there's the appellant. Tell us how much time you want to reserve. So if you each would introduce yourself, appellant, please. Good afternoon, Justices Council. My name is Stephanie Kopalski and I represent the defendant appellant Kids Work Chicago, Inc. And how much time do you want for your rebuttal? I would like to reserve 10 minutes for rebuttal, Your Honor. 10 minutes, okay. Good afternoon, Your Honors. My name is Doug Bax and I represent the plaintiff appellee Kids Work, I'm sorry, Brighton Properties LLC Rockwell series. Also in the room with me, just for the record's clear, are two of my colleagues, Patrick Spellman and Dave Strube, and my clients, Tom Stanton and Kevin Breyer are listening in. Thank you very much for that. You may begin. Thank you. Good afternoon, Justices Council, may it please the court. To begin, and to be clear, the plaintiff that is party to this appeal are not the plaintiffs that ultimately lost at trial. The plaintiffs to this appeal admitted to the trial court that they were not the proper party to the litigation. Plaintiffs Council. It doesn't have anything to do with the use and occupancy order that's before us. Well, Your Honor, the plaintiffs through Mr. Bax confirmed on the record that they were not the proper parties. That's not my question. What this is about the use and occupancy. Correct me if I'm wrong. That's what's been that's what's before us. So, what does any of that have to do with the order before us. Well, Your Honor, the parties that were awarded the use and occupancy payments substituted themselves out of the litigation, after they obtained those use and occupancy payments and admitted to the court that they were not the proper parties to the litigation. So what those plaintiffs are asking, hasn't that been waived by you. No, Your Honor. So we had raised standing. The problem is. So, there was a trial. We're a trial now right. Correct Your Honor trial proceeded to raises. Why isn't that too late. Well, Your Honor, because we got their trial exhibits, the day before trial, that's not here nor there. I mean that's something you know you wasn't there discovery. There was no discovery, Your Honor, there was no discovery discovery, can you, can you, you have a right to discovery. We do, Your Honor, and we were denied that right by the trial court to take any discovery. Correct, Your Honor. Okay, and but you haven't appealed that or. We did not appeal that at the time, and so there's nothing before us in that. So the only thing before us is a use and occupants. Correct, Your Honor. So, the amount of the use and occupancy isn't that what's that issue here before us. Yes, Your Honor, it's the merits of the case and what happened. When those use and occupancy payments were awarded. So this is a rare case where the facts are as clear as the law. So clear I don't think we would be here having a discussion like we are do you. Well, Your Honor, I'm here to answer all of your questions and I don't think it's so clear. I mean, that's that's why we have appeals, and we have a different of opinion so that doesn't make it clear. I'm just saying, we're under under section 102 of the eviction act, which is entitled, when action may be maintained. That clearly states that the person entitled to possession of the lands or tenements may be restored there to under a number of circumstances. Under the eviction act, the landlord who meets those requirements. Under the act has the benefit of a summary proceeding for the tenant, Illinois Supreme Court rule 181 be to allows any defenses that may be proved as if they were specifically pleaded when no answer is ordered by the court. Now in our case, our affirmative defenses were stricken on the morning on the day before we went to trial. Among those defenses was standing as an affirmative matter, and the plaintiffs lack of right under the eviction act. Wait a minute, you were, you were questioning standing but your client was paying rent to the Delaware corporations, since 2014 So how could they say they didn't know the Delaware corporations were the owners of these buildings. Well, Your Honor, it's actually not part of the record, to whom the checks were being made. The issue is, is that it's the Illinois entities that brought this litigation in the middle of COVID. The Delaware issue is actually that the checks were not being made to anyone you are using the premises for your business and not paying rent to the owner of the property. Once COVID started. Well, Your Honor, before that you're in Delaware right the Delaware corporations right and then you stop paying during COVID. Is that right. It is not clear that the payments were made to the Delaware entities, there were multiple checks entered as evidence in the underlying action and those did not make that explicitly clear. What were any of those checks made out to someone other than the Delaware entities. Yes, Your Honor, which checks were they made out to the, I mean, some of them were made out to the Illinois entities, sometimes they were made out to the Delaware entities. Okay, so that shows that they were aware so you're using conceded that they were aware of the Delaware entities. Correct, Your Honor, but the issue isn't what the tenant was aware of the issue is, is that the Illinois entities brought this action when they had no right to the possession, or to the rent, because they transferred the property via deed to the Delaware entities. There was a substitution of parties later right, the judge allowed the Delaware corporations to substitute LLCs to substitute for the Illinois LLCs at some point. So, when it became clear on the first day of trial on December 16 2020 that these parties were not the proper parties and that was admitted. Later on during the continued trial, the trial court did grant emotion to substitute and three new party, three new plane. So doesn't that. And you're standing argument. Well, Your Honor my standing argument pertains to that specific period of time when the use and occupancy order was entered when the contempt was entered. And when the sanction was entered what happened after yes they fixed their issue when they went to trial and the three new plaintiffs went to trial, they ultimately lost that trial. But the issue is who was the proper party to get that use and occupancy payment. And under Illinois law, a party has to be able to maintain an action under the act in order to also get use an occupant occupancy payments, because otherwise, a third party could come in and say hey grant me use an occupancy for 123 Main Street LLC, and that party has absolutely no right, the landlord could then come out of the woodwork and say hey why are you paying this party you're supposed to be paying me. So the very central issue in this case is that these plaintiffs were not the proper parties to get the use and occupancy payments that they were awarded, and that is the central issue, and they admitted as much for all of the leases substantially similar. The article nine for example in the lease was signed in oh eight is a fire and other casualty section and part C of that talks about abating the rent until the landlord substantially completes the repair or restoration work on the premises, but nowhere in this could anybody have contemplated having to close the doors, even though there was no damage to the building because of coven. So, we accept that that was not contemplated in anybody's lease. So, if you're relying on article, nine of the leases. This doesn't seem to cover what you're talking about. So yeah, I believe that was one of our affirmative defenses, and the trial court had stricken those affirmative defenses. The day before we began trial on December 16, your affirmative defense was that there was COVID so you couldn't operate. You had to shut down business, even though the business was there, the building was appropriate there's no damage. Nothing wrong with building, just nobody could come to school. Nobody could come to preschool. So that's your argument that that's the casualty. Right. There's nothing in the lease that says anything like that. Now, I mean I accept the fact that nobody could have predicted that, but there's nothing in the lease that says that there's nothing in the lease that would contemplate COVID. But even the part that is in the lease says that the landlord has the duty to abate the rent. It doesn't say the tenant can stop paying. That is the language of the lease, Your Honor. So, even if you were to expand the word casualty to the nth degree to include this unknown unpredictable unheard of COVID shutdown, which I don't think is accurate, but even if you did that, it would still be the landlord that had to abate the rent, not the tenant, they could just say I'm not going to pay. Well, Your Honor, in their very final, the tenant unilaterally said I'm not paying. Well, Your Honor, that is not what happened and that is what the litigation, the underlying litigation was supposed to resolve the landlords refuse to even negotiate any abatement. If KidsWork didn't pay April and May rent in full, and then they filed two lawsuits in state court in the middle of COVID, they filed another lawsuit in federal court, attempting to come after KidsWork's owner. Is it accurate that KidsWork got some PPE money out of the federal government? Your Honor, that has not been entered into the trial record that is not part of the record that has been an argument that was made by the plaintiffs. However, In the trial court? I'm sorry? In the trial court? And the trial court, but the They made that argument in the trial court. They didn't have the same amount of appeal. Okay, so the trial court heard this. And I'm pretty sure I saw it in the record. So that's where I saw it right in the trial court record. Yes, yes. But the key is that this case should have been dismissed in December when it became clear that these parties had no right. At that time, KidsWork would have been afforded its attorney's fees and its costs. I don't understand your argument. I'm getting confused. I mean, I've read it. But you're saying that you did not know that Delaware had been transferred to Delaware, right? And that was learned the day before, learned around the trial, right? That's correct. Okay. Now, prior to that, the use and occupancy occurred. Yes. And you never raised an issue such as that, that was the wrong plaintiff. You never raised it. So, Your Honor, we got their trial. That's my question. Did you raise it? You hadn't raised it prior, when the use and occupancy was decided, that was not raised by you, correct? That was, because Your Honor, we had You did raise the use and occupancy that they weren't the right parties? That's correct. So, we raised the defense that they were the improper parties to the litigation. So, you knew about that? So, you knew about that? So, we raised it. When did you first raise it? We raised it for the first time on the first day of trial. Right. And when was the order for use and occupancy originally entered? The order for use and occupancy, I believe, was entered in March or April of the following year. Okay. So, all of this is already known to you. So, I don't understand why you're here. I mean, now I'm confused. So, the use and occupancy is after the trial, after the judge hears all this, and makes a decision. So, we already know they substituted the party. So, where's your argument? Well, Your Honor, my argument is that the party that obtained the use and occupancy payment is not a proper party to the litigation. You just told me it happened after trial, and they substituted in Delaware. So, Your Honor, if I may just walk through the trial here, because we had the first day of trial on December 16th. Let me just ask a question. At trial, there was an amendment of some sort for the proper parties. Is that correct? That's correct. That occurred in April of 2021. At the trial? At the continued trial, because the first day of trial was December. Okay. And the use and occupancy was after that? The use and occupancy was ordered after the first day of trial, but before they substituted in. So, the use and occupancy was awarded to the party that substituted itself out of the litigation, and three new parties came in. I'm sorry that I didn't write it down, but what was the date of the use and occupancy order? Your Honor, the use and occupancy, I believe, was entered in March. Of 2021? Of 2021. Okay. And the trial was in April? The first day of trial was on December 16th, 2020. And at that time, it was realized that they had the wrong parties? That's correct. Okay. So, again, all of this is happening after. But it's still the incorrect party that obtained the use and occupancy. They got the use and occupancy. They filed a rule to show cause. They filed petitions for rule to show cause. They filed petitions to discover assets. They froze our bank accounts. They got the contempt order. They got the indirect civil contempt. Then they substituted themselves out. So it's not the new party that's getting these payments. It's the old party, the old plaintiff, that got the use and occupancy. But all of this was known to you on the first day of trial? Yes, but I'm not understanding. I'm not understanding why, then, you waited, you know, so long. They knew. You knew. Everybody knew. Your Honor, we're not the ones that delayed. It's the plaintiffs that delayed. They admitted that they were not the proper parties. Then they proceeded as the wrong parties to get use and occupancy. Then they substituted in the correct parties. So the party that was awarded the use and occupancy is the wrong party. And they've admitted as much. That is the linchpin of this entire case. They admitted that they were the wrong party, yet they still pursued and pushed forward and doubled down. And got use and occupancy awarded to them. Then they said, we're going to sweep this all under the rug. These three new plaintiffs are going to come in. They're going to win. Well, they lost because they failed to meet their burden of proof at trial. Did you not know? Did you not know that there had been this change in who the landlords were? Your Honor, it's part of the public record, but our client was not privy to those internal documents. So are you telling us that your client was paying rent to someone who was no longer the owner? Well, Your Honor, this whole thing was just so confusing. And even if you. Can you answer that question? It's a simple question. Yes or no. She did not know, Your Honor, kids work. The company did not have that personal knowledge. And if you look at the transcript from the first day of trial, the owner of these entities couldn't even keep up with. And so there's no evidence of her paying rent to the wrong party because she never paid rent to anyone during this period. Is that what you're telling us? Well, there's evidence of her paying rent to various parties in this litigation. But the issue of rent was to be, to be decided by the trial court and we got a defense verdict. So she did know that there was a new landlord. But Your Honor, it doesn't matter because it's the wrong party that got the use and occupancy. It does not matter that she knew it's what under your analysis. She doesn't have to pay rent to anybody. Right? Well, Your Honor, as I said, that was the issue that the underlying court was to decide. And again, we got a defense verdict. So does that. Decided to me that that just seems to be an inherently unjust and unfair position. Your Honor. What's unfair is that kids work. This case should have been dismissed in December and kids work had to be.  And that's why they had to keep litigating and incurring fees and costs. When the wrong party to this litigation kept pushing. During COVID. What's also. Was kids were paying rent to anyone. During COVID. No, because the issue is being litigated. In the trial court. That's why they had use and occupants. Right. Before COVID the last check that they wrote. Went to the Delaware LLC. I'm not sure of that. Your Honor. Let's assume that's true. Let's assume that that's true. Then I don't understand why any of this makes any sense. Let's assume that what justice, but just, he just said is true. They did write checks. To the Delaware. LLC. Okay. Okay. And you even admitted that earlier that yeah, they did. You've been at that. So we know they did that. So they knew. You know what they knew. They knew it. They wrote a check. Okay. Yes, your Honor. So, okay. Let's assume that they were paying the Delaware entities. Now they use an occupancy order requires them to pay the Illinois entities. There were no Illinois entities anymore. They were all Delaware. And then the paperwork had been switched over. The refinancing required them to file for LLC status in Delaware. And that's what they did. So they're. They did not convert the Illinois entity into Delaware entity. The Delaware entities are completely separate and distinct. Limited liability companies that are separate from. The Illinois entities and the order. So the Illinois entity is a separate entity. And the owner of all of these could not even testify as to the complexity. Who owned what and what property went where. Because that is the complex asset protection structure. That he had set up. So these entities are completely separate. There's Delaware and there's Illinois. Well, then why would they ever have written checks for rent to the Delaware LLCs? And why would they have written checks for rent to the Illinois entities? During the period before COVID. Because I believe the record reflects that the owner of kids were, it got an email that said, Hey, now you're going to make these checks out. To this entity. And she didn't question that. And so assuming that it's the Delaware entities that have the right to rent. Why is the use and occupancy requiring the defendant to pay to the Illinois entities? It doesn't make any difference because they substituted the right party at some point. Not at the time that they used. It's not like some Illinois LLC got to put this money in their pocket and walk away with it. And screw the Delaware LLC. It turned out to be the right party. The way that the order is written, the Illinois entity could absolutely do that and walk away. So what would be the point of allowing substitution of parties somewhere in the middle of litigation? When you find out that it's the wrong parties. On one side or the other. I mean, it's a pretty common practice. Isn't it. And what would be the point of allowing that if every single time it got allowed, somebody could come in and say, Oh, well, you know, from the very beginning at the very beginning, it was the wrong party. So guess what? This whole case is messed up. Well, so your honor, but you said during litigation, they didn't substitute at the pleading stage or in the discovery stage or at the summary judgment stage, we were literally in the middle of trial after we proved that the Illinois entities did not have a right. And we're not the proper parties. They still obtained use and occupancy. Then they substituted in. They could have moved to, to have the court, ask the court to vacate that order and enter a use and occupancy order to the proper Delaware entity. Then that would have been cleaned up, but they didn't do that.  They didn't do that. They didn't do that. They doubled down, they pushed forward. And this is where we ended up. No, I believe my time has run out. So I would like to reserve whatever is left for you. You can have your 10 minutes when we're not, are there any other questions? No. Okay. Is there anything else you want to say right now? I just to summarize really quickly, because it's our position that the use and occupancy order should be vacated. Then the contempt and the sanction should be vacated with it as well. Okay. Thank you. Helps to unmute. Good afternoon. Your honors. May it please the court. I think there's a couple of things that it's important based on your questions to appellants to address. First of all, Justice Simon, you mentioned the issue of whether they waive their right to assert. There was a lack of standing by the Illinois entities. And you mentioned the timing at trial, right? They waited until trial. I think that that's, that's a good point, but I think on top of that, their conduct pre-trial indicated that they were making affirmative representations that the Illinois LLCs were the proper parties to be the plaintiffs in the case. What do I mean by that? They filed affirmative defenses. Those affirmative defenses were premised on the idea that the Illinois LLCs had breached the lease by refusing to accept no rental payments, or they call it shrink rent, reduced rental payments during COVID. So in other words, they're saying the Illinois entities are liable as a party to the, to the leases for current breaches. So they're representing that they're the proper party. They brought counterclaims against. So what you're basically saying is that they waived it. It's an admission against themselves. And by doing that, they've admitted that this, this issue of standing is a red herring. Right. That they knew, right. That they, that this is something that didn't, that they could have addressed it. It could have brought an affirmative defense. But they waived it. But they waived it. And the suggestion that they didn't know is one is there is no doubt about it, that they were writing checks to the Delaware LLCs pre COVID before. And is that in the record? Yes. We made that argument through the court, through the trial. Multiple times. Are the checks in the record? I'm sorry. Are the checks in the record? I looked, I didn't see any checks. I don't believe that the checks were entered into the record as of the time of the use. Are all the leases in the record? Cause I looked and I, I don't recall seeing all the leases either. They were entered into the record at the first day of trial on December 16. All of them. There's only two. Yes. And they're identical. Are they? Well, the one that I'm looking at was signed in 2008. That was still an Illinois LLC. When was the second one signed? The second one was signed in 2011. That was before the Delaware LLC changed also. Correct. Because what happened is by that point, there's two Illinois LLCs, right? Two separate owners and landlords. There's a subsequent refinance in 2015. The bank as part of its technicalities and its requirements says we want Delaware LLCs to be our borrowers. Was there a lease with the Delaware LLCs? No, there was no lease signed between the Delaware LLCs and KidsWork. Instead, they were notified of the fact that the Delaware LLCs were now the landlord. And that's when they began paying or writing checks to the Delaware LLCs. And that letter is in the record. Yes. We argued that to the trial court multiple times. The other part of it. That letter to KidsWork is in the record. Because I admit, I looked through the record for that. I must have just missed it. I didn't see it. I don't believe that particularly it was an email correspondence. Don't you think that these documents are sort of important for us to see? Yes, Your Honor. I do believe that they're important for you to see. But the reason why I didn't think that they were necessary for purposes of this appeal is this. All of this came to light at that first day of trial in December, right? And KidsWork brought a motion to dismiss, which was then briefed. And all of that was argued in the motions, the briefing on that. And at that time, the trial court said, KidsWork you waived your right to assert standing as a defense. You didn't assert it in any of the 25 affirmative defenses you raised. You've never argued it when we originally brought our motion for use in occupancy. You were aware of the fact that there were these new Delaware entities. So that's gone. You don't have the right to make that assertion. The trial judge made some other determinations. But on that basis alone, she determined that they had waived their right to standing. And essentially said to us as the plaintiffs, the Illinois LLCs, you can go forward even though the property had been transferred to the Delaware LLCs because they waived the right to argue that. But if their concern, if KidsWork's concern as expressed today was, well, wait a minute, we might be paying the wrong parties. What if we pay the Illinois LLCs and then the Delaware LLCs come back and say, why didn't we get the use in occupancy payments? We addressed that. We made sure that that, because everyone understood the circumstances. We said to the trial court, look, your honor, you can deny their motion, but you can let us substitute in, you know, whichever one you prefer to do. She said, I denied their motion. They waived the right standing. But just in case in the use and occupancy order, we provided that the payments of use and occupancy rent would be to the Illinois plaintiffs for the benefit of the Delaware LLCs. In other words, we are making sure that the money goes to the right party. After that, we then moved to substitute in the Delaware LLCs for the Illinois LLCs, not because we were required to, because basically the trial court had told us we don't have to do that. They waived that argument, but we did it because it just made sense to us to make sure the record was clear as we continue on on this case. So it seems to me that I got an agency relationship, would you say between the Delaware and the Illinois? Yeah, they're affiliated entities. The same three individuals who own the Illinois LLCs own the Delaware LLCs. And that's part of why there was this confusion, frankly, is, you know, it wasn't as if the Illinois LLCs sold those properties to an independent third party, got paid, and then they were done. It was part of these is the way they see administrative requirements for the refinance that they transferred title to Delaware LLCs. But to my three clients, Delaware LLC, Illinois LLC, they're all the same in their mind because they're all entities owned by them. I'm not suggesting that we can treat them as the same. They have separate legal status. I understand that. But I think that's, you know, that's the explanation as to why this mistake happened in the first place and why we subsequently amended to bring them in to make sure that it was clear that now the Delaware LLCs were present and they were the parties to prosecute the case. So I think that, I guess, the other point I wanted to make is the suggestion that the tenant, KidsWork Chicago wasn't entitled or allowed to seek discovery, frankly, is not the case. And you can look at the record. At no point did KidsWork issue discovery until the day before trial. They didn't issue any discovery. No one said they couldn't. No one said the parties couldn't engage discovery. They just chose not to do so and waited until trial. So I think that- I thought counsel said that the judge denied? Judge did not deny their right to discovery. Did I hear that right? Did you hear that? Maybe I'm wrong. I heard that. I heard that. She said- I heard it. At no point am I aware of any order by Judge Denmark that said the parties couldn't engage in discovery. Now they waited to engage in discovery on the day before trial. And we had some objections to the fact that they submitted, I don't remember how many production requests, but somewhere in like, 250 production requests on the day before trial. So we objected to that, but it wasn't because there was an order in place that said the parties cannot conduct discovery. So they were free to conduct discovery. They just chose not to do so. Well, on that day, did the judge just say, wait a minute, we're getting ready to start. You should have done this earlier. So no, we're not going to take a pause now for discovery. Well, what the judge- Something the judge might have said. Yeah, right. No, what the judge ultimately said is do your best to try to get documents to them that you think are relevant for purposes of the trial, given that this is supposed to be a summary proceeding about possession. So I don't want to stop. I'm sorry, Your Honor. Go ahead. Did Pittsburgh ever ask for any kind of rent accommodation during COVID? As I recall, they were asking for some kinds of accommodation when they stopped the unilaterally stopped paying in March of 2020. And then there were some discussions amongst the tenants and the landlords with respect to, you know, potential, you know, how, how we're going to deal with the fact that they weren't operating their business for a short period of time. And then thereafter we're operating their business, but at a reduced capacity because they got this emergency license from the state of Illinois. So were any accommodations ever made? As my understanding is that we did offer certain accommodations, but that we did demand that they pay rent, at least in March and April in full and then address going forward, how much rent would be paid. And what about this issue about getting money from the federal government? Okay. So it's our understanding from searching for public records that they were going to bring that out in testimony at trial. Right. So, but what we did present to them, and I think this is also critically important is remember their, their argument is essentially this COVID stopped us from, well, not COVID the COVID-19 pandemic resulted in orders from.      Stay at home. Stay at home. Stay at home. Stay at home. Stay at home. You can't go to work. Right. And at some point governor Pritzker said, okay, some people can go to work because they need to help emergency workers and provide for their kids. And so the kids work got a license to do that. It could provide child daycare centers for emergency workers and kids. Works argument was, as you, as you mentioned, your honor, is that under this casualty provision, they thought that COVID-19 and more particularly judge Pritzker, Governor Pritzker's orders constituted a casualty that damaged the property. We obviously disagree with that, but in, in asking for the use of occupancy that we were awarded, we accepted that theory. We didn't challenge that theory. We said, look, you know, we, we think we're entitled to the full amount of rent under the lease, but because we want to make it, we're trying to get anything we can because it's been 10 months and almost, you know, that we, since the case has been pending, it's been over a year since we received rent. We'll accept that we took their trial exam, their tribes of it that they prepared. That's just the table that says, here are the months in which, you know, we were prevented from working. Here are the months where we started to work and at what capacity. And they said, here is the rent that we contend. We owe under our interpretation of each lease. And we said, pay us that. Just that we'll take that. And we accepted that argument. And that's what the court ultimately entered is for use. And so, you know,  fair constitutional argument. Because it's not the full rent under the lease, the full monthly payments or the rent. The fence or that the kids were chuckled. The tenant contended was due. So it seems to me, we tried everything we could. To, you know, Get to a point without an evidentiary hearing that says. We've accepted their argument. We've accepted their, their primary defense. They raised the defensive standing, but that's been waved, but we'll put into the order that it goes to the benefit of the Delaware LLC is to cover their concerns. So to me, ultimately, this question of use and occupancy. Is a done deal. It doesn't seem like any of the arguments they're making, render that improper. And more important point too, is. The award of use and occupancy is independent of ultimately what happens at the trial on the merits. The cases are very clear on that. It's this idea. Almost an equitable principle that says, look. If you own, or if you're in possession of the property. And you're operating in that property during dependency of litigation about your potential eviction. It's only fair that you pay for some benefit, the benefit that you're, that you're receiving. And there was no dispute that they were in possession. There is no dispute that they were operating their business, at least at some capacity we've accepted all of them. So I think that this is exactly the type of case that you should not see an award of use and occupancy is appropriate. It isn't a case where the tenant said, Hey, look. We want to get right to trial. We're not even going to answer the complaint. We're not going to just be silent and there's going to be a general denial and we'll do whatever we can to trial. It was. You know, contested, prolonged, delayed litigation. 25 affirmative defense, nine counter claims. Eight most are eight hearings, several motions, motions for partial summary judgment. Oppositions to use an occupancy. This was prolonged litigation. And in that circumstance, I think that the eviction act very clearly says, okay, tenant, if that's the path you choose to go. The offset is going to be, we're going to give use an occupancy rent to the landlord, their dependency, the appeal. All right. During dependency of the litigation. And that's true. Even if the landlord loses that trial on the merits of the lease. So I think that that's exactly what happened in this case. And that's why. Let me ask you a different question. Sure. In your brief, you. You don't believe this is a friendly contempt. I do not. I've read your briefs. Why do you think we should. Have them now pay. The contempt. Okay. I mean, I've read, I know what you say there, but I mean, after, when you hear, I mean, they, they, they had a good faith belief. With regard. With regard to the standing issue. I mean, from their point of view, a good faith belief that. This about the standing issue. Why should they be penalized? So here's, here's my take on that. First of all. The fact that they had a good faith belief that they didn't have standing that had issue had been decided and rejected by the court. But that doesn't mean they can't test it. That's fair. They disagree. Right. But their concern would be, we're going to pay the wrong part. And that could be prejudicial to us. But that concern was ameliorated by the fact that we made sure that the use and occupancy order said. Pay the plaintiffs, the Illinois series LLCs. But make sure that it's for the benefit of the Delaware LLC. But there's no issue with respect to that. So this idea that they needed an immediate ruling. That would, you know, adjust things as how the case would be. Prosecuted or defended to trial is inaccurate. And that's just one of my points. Typically, as I understand what friendly contempt proceedings are, are like, for example, I think it's more common as discovery issues. Where that can impact both parties, you know, decision-making before they get the trial, what's going to be relevant. What can they, you know, what's discoverable and what they can present as evidence to prosecute their case or defend their case. In this instance, the determination of use and occupancy doesn't affect anything that happens at trial. It's independent of the determinations of the merits of the case. So there's nothing beneficial to the landlords. On a friendly contempt. All it does is basically say the tenant's going to get the extension or a time period during the appeal in which it's not going to have to pay use and occupancy rent or any rent and continue to use our property. So that's why I don't think where there's an order that requires one of the parties to pay for its use of possession. That the landlord can say I'm okay with that. Or that we said it was okay with that. We certainly didn't. And that objecting to that renders that. Contempt proceeding, non-friendly for lack of a better term. It was definitely not friendly. It wasn't for. We certainly wanted to get paid. And an amount of the judge. I mean, that was a, quite a large amount. For a single payment. In contempt. So. When I think there was a request a hundred dollars a day or something. I don't know.  I don't know. So. That was substantial amount. And so that indicates to the judge too, it was nothing about being friendly, I guess. I agree with you. And I would, I would, I'd add this. So the sanction was $120,000 for their failure to pay. Keep in mind this case was filed in June of 2020. When we asked for renewed use and occupancy, when we renewed our motion after that first day of trial in 2021, we only asked for use and not, or the court only awarded use and occupancy from October, 2020. To present and then said going forward, it's going to be this much each month. So there was a whole period of June to September of 2020. Where they were in possession of the property case was pending. No use and occupancy was awarded. And so I would, I would, I would, I would, I would, I would submit to the court that. If you look at the numbers in their trial exhibit, where they calculated what they contend was rent due. It's more than $120,000. So I would, I would submit to the court that. A sanction that says, Hey, look, we're going to sanction you. We're going to find you for the use and occupancy that we didn't award that we could have awarded. To incentivize you to pay what we did award is fair and reasonable. Thank you. Any other questions? I just have one. Mr. Max, I'm assuming that your law firm represents a lot of. Landlords. I certainly hope you're going to think about changing your leases for exceptional circumstances. So we don't have to go through what is a casualty anymore. Right. I think that there's going to be a lot of changes to a lot of, we do represent. A few landlords. It's not our primary business. But, but I don't disagree with you that there's a lot to be changed and addressed in leases going forward, giving the pandemic. No one could have predicted this. No one. So, but now, but now it's a fact. So I think people need to deal with it. Well, thank you. Anything else you want to finish? I do not. That's all. Thank you very much. Ms. Yes, your honor. First, I would like to ask this panel to review the procedural history of this case. Very carefully. Because that is the most, one of the most important things. I would like to ask this panel to review the procedural history of this case. Because that is the most important thing. What has transpired in this case? And the time with which it transpired. It's simply incredible. This does not happen. These plaintiffs went to trial on a $9 million case in six months. It doesn't matter. That's not before us. Okay. What's before us is a contempt. So why don't you address that? If this appellate court does not overturn the trial courts grant of use and occupancy. To the incorrect parties in this litigation. You will be creating law that is going to allow third parties. That are not even parties in the litigation. To obtain use and occupancy. To obtain use and occupancy. The use of occupancy. Through a party that has no right to that. Let's stop there. Okay. Do you disagree? With Mr. Banks. That the use of occupancy order. Says the payment is two. The Illinois. LZ. For the benefit of. Delaware. Or worse of that effect. Is that correct? Or not? Yes or no. The order states, Illinois FBO. Delaware. For the benefit of. So what does that mean? Your honor. How could it possibly be two payments? Doesn't that mean that the money is going to go. To the party that you say that money should go to. For the benefit. That's what that means. Doesn't it? You agree. I agree. I, I, I guess I agreed that FBO stands for, for the benefit of. You must've known what it was because you entered, you know, when you saw the order, you would have asked the judge. That's in the order. So. We have that. So. Again, Your honor, we had objected to the filing of that order. And if the justices reviewed the transcript. The trial judge was unable to identify. The party to whom the payments were being made. That order. But we're dealing with the order. And that order. Seems to satisfy. The. Argument. That you are raising. That this is the wrong party. That you are raising the wrong party. Because it's for the benefit of what you say is the right part. And if that's true. And we're only looking at the contempt order. Nothing. With regard to the trial itself. Your honor. The order. In this case was entered by an incorrect party. For, for the benefit of. A third party. That is not a party to this litigation. Yes. Part of the litigation. They now. Well, your honor, they are now, but I thought we weren't looking at that. I thought we were. That happened later, but, but, but it's still. Can't can't somebody. Can't you negotiate. For the benefit of anybody. I mean, it's a, it's a, it's a, it's a, it's a, an order from the court. The court could. Was asked to do it. Now you may have objected. But they did it. And is there any reason why we shouldn't allow that? Because it does. Satisfy. The situation, particularly if, as you say, if we should look at what happened before. All of the, your pleadings and everything. You never had a, you never reserved this argument. With regard to standing. Your honor first. The order does not comply with the eviction act. You have to have a right to possession to bring an action under the act. The party that brought the action. We're way past that. We're not, we're not at the action. We are. It was brought. Okay. Well, all right. You're just repeating what you said before. I understand. What about the argument that. We should consider this a friendly. Contempt order. Your honor. It absolutely is a friendly contempt. This is a matter of first impression in Illinois. There is no prior case that awards use and occupancy. FBO some other party out there. We had a good faith basis. For testing the correctness of this order. That is why we are here. I don't understand. Maybe I'm missing. So the word friendly does not mean that. I don't understand. So under your understanding of friendly, that means that. The court doesn't consider it friendly nor did the other side. Found us found kids work and indirect civil contempt of court. And did. Order a pretty large amount. I mean, half the money. Yes, your honor. And if that sanction is upheld. That will have a chilling effect. Across the entire landlord tenant. Litigation line. Because then all a judge has to do to avoid having this appellate panel review, its order is enter a sanction that is economically infeasible for someone to put up an appellate bond. And that is sanctions are meant to incentivize compliance, not punish. The record is clear in this case that this was punishment. It's half of what the use and occupancy. Was entered that sanction, even if for some reason the contempt stands and the use and occupancy stands. The sanction simply cannot stand because of the chilling effect that it would have. Second. And. Kids work has bent over backwards to settle this case and to not litigate and to not incur the attorney's fees for both sides. The plaintiffs in this case refused. Refused completely refused. In good faith negotiate settlement. And I understand that that is not part of the record, but that is a very important point. To make. And Mr. Bax had argued that, you know, ultimately if the landlord loses. They can pay the use of occupancy back. Well, they lost. So what are we fighting about? If that's his argument? And again, I, I asked this court to review. The procedural history, because it is extremely important. And this should not happen again. And thankfully kids work had counsel that was able to fight for it. Thank you. Thank you very much. Appreciate your briefs and your, your arguments this afternoon. Thank you very much. Both did a good job. We will take the case under advisement.